UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00028 |
| ) | Judge Aleta A. Trauger |
| WILLIAM LEE, in his capacity as ) | |
| Governor of the State of Tennessee; ) | |
| DAVID RAUSCH, in his capacity as ) | |
| Director of the Tennessee Bureau of ) | |
| Investigation; and TONY PARKER, ) | |
| in his capacity as Commissioner of the ) | |
| Tennessee Department of Correction, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

John Doe has filed a Motion to Clarify (Doc. No. 46), to which Governor William Lee ("Governor"), Tennessee Bureau of Investigation Director David Rausch ("Director"), and Tennessee Department of Correction ("TDOC") Commissioner Tony Parker ("Commissioner") have filed a Response (Doc. No. 49), and Doe has filed a Reply (Doc. No. 54). For the reasons set out herein, Doe's motion will be granted.

In 1987, Doe pleaded guilty to several offenses, including two counts of aggravated rape.[1] Doe was sentenced to serve sixty-five years in prison, and he was released on TDOC-supervised parole in 2003. He expects to remain on parole until the 2040s, at which point he will be close to eighty years old. (Doc. No. 11 ¶¶ 4–8.) Although Tennessee had no sexual offender registry when Doe committed his crimes or when he pleaded guilty, subsequent enactments required him to register as a "violent sexual offender" and comply with a number of exacting

---

[1] When Doe was prosecuted, the State of Tennessee took the position that Doe had not himself raped or otherwise had sexual contact with the victim, but that the victim was raped by a codefendant whom Doe aided and abetted.

restrictions and requirements associated with that status. (*Id.* ¶¶ 1–3, 9–12.) Courts, including this one, have held in a number of cases that such retroactive application of Tennessee's registry law is unlawful (or, as the procedural posture called for, *likely*[2] or *plausibly*[3] unlawful), on the ground that the State of Tennessee is constitutionally forbidden from increasing the punishment associated with a crime *ex post facto*—that is, after the crime has already been committed. *See, e.g.*, *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson, J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.) *Reid v. Lee*, 476 F.Supp.3d 684, 708 (M.D. Tenn. 2020) (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.).

On January 13, 2021, Doe sued the Governor, the Director, and the Commissioner, seeking relief from the state's allegedly unconstitutional policy. (Doc. No. 1.) On January 20, 2021, Doe filed a Motion for Preliminary Injunction prohibiting any of the defendants from enforcing the Act against him. (Doc. No. 10 at 1.) On May 12, 2021, the court granted the motion and ordered the following:

> It is hereby **ORDERED** that the defendants shall not enforce any provision of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Monitoring Act, Tenn. Code Ann. § 40-39-201 *et seq.* ["the Act"], against Doe or require Doe to comply with any portion of the Act. Each defendant shall, to the extent within his power, take such necessary steps to ensure that Doe is removed from Tennessee's sexual offender registry.

(Doc. No. 30 at 1.)

The Order did not address Doe's parole status, and Doe does not appear to dispute that Tennessee has the ongoing legal authority to keep him on parole, given that his parole is part of

---

[2] *See* Fed. R. Civ. P. 65.

[3] *See* Fed. R. Civ. P. 12(b)(6).

2

his original, lawfully authorized sentence, not a separate regime imposed on him retroactively. As a practical matter, however, parole conditions and registry conditions are often closely intertwined. Indeed, recent registry-related litigation in this court has provided reason to think that sometimes even the government officials charged with enforcing parole and/or registry conditions are unaware of which of those two options they are applying in any given instance. *See Reid v. Lee*, 476 F. Supp. 3d 684, 694 & n.8 (M.D. Tenn. 2020) (discussing confusion regarding the source and nature of the state's authority, if any, to impose restrictions on offenders' involvement in Halloween activities).

According to Doe, after the court granted him preliminary relief, TDOC did not give him "anything in writing from the parole office about how the conditions of [his] parole supervision had changed due to [his] removal from the registry." (Doc. No. 48 ¶ 2.) Doe became worried about what he could and could not do, particularly with regard to his parenting activities. For example, he had to rely on his attorney to confirm with TDOC that he could celebrate Halloween with his younger daughter without fear of law enforcement showing up to his home. (*Id.* ¶ 3.)

Doe's confusion, however, continued—with good reason. When he reported to the parole office for an assessment in December 2021, he tried to fill out "the reporting form for non-sex offenders" but was told by the parole officer that that was not the correct form for him. (*Id.* ¶ 4.) A day or so later, however, a case manager called him and told him that he "no longer had an assigned parole officer" and "no longer needed to report in-person to the parole office." (*Id.* ¶ 5.) Again, however, he received no written explanation or assurances from TDOC about its position, which left him concerned. (*Id.*)

Matters came to a head on January 21, 2022, when several officers came to Doe's home unannounced to perform a "sex offender check." (*Id.* ¶ 6.) Doe was "shocked and distressed" but "sat down at [his] dining room table as all but one of the officers fanned out in [his] house and

3

began searching." (*Id.*) Shortly after the officers arrived, Doe complained to the officer who appeared to be in charge that he was no longer on the sexual offender registry. That officer called someone whom Doe believes was a supervisor, and, after the call was completed, the officer apologized to Doe and called on the other officers to stop their search and leave. According to Doe, the officer told him that his name had erroneously appeared on the officers' "list" of sexual offenders' homes to check, but the supervisor had informed the officer that that inclusion was in error. (*Id.* ¶ 7.) The officers left. Doe estimates that they were in his home for fewer than ten minutes, but he states that, "[d]espite the short length of the search and the officer's apology upon realizing the search should not have occurred, this event was extremely traumatic for" him, particularly given that he had "understood [that he] was no longer subject to these kinds of intrusions on account of the preliminary injunction." (*Id.* ¶ 9.)

On February 23, 2022, Doe filed a Motion to Clarify, asking the court to (1) "find [that the Commissioner], through his agents and employees, violated the Court's preliminary injunction order" and (2) "clarify that its injunction prohibits TDOC from enforcing the registry laws against him, including the application of the Sex Offender Standards of Supervision against [him] and the supervision of [his] parole in the [Programmed Supervision Unit ('PSU')." (Doc. No. 46 at 1–2.) To support his motion and explain why he had concluded that it was necessary, Doe provided a Declaration describing his recent dealings with TDOC, a Declaration by one of his attorneys corroborating aspects of his account, and copies of a number of relevant TDOC policies. (Doc. Nos. 47-1 to -9; Doc. No. 48.) Among the documents provided are the Manual of Unit Operation for the PSU (Doc. No. 47-7) and a copy of TDOC Policy No. 704.05, which established PSU as TDOC's "specialized unit . . . for the supervision of registered sex offenders" (Doc. No. 47-3 at 2). Doe asks that he no longer be supervised by the PSU, which was apparently responsible for the search of his residence, because he is no longer a registered sexual offender.

4

On March 9, 2022, the defendants filed a Response in opposition to Doe's motion. (Doc. No. 49.) The defendants did not support their Response with any declarations or affidavits, instead choosing to rely on the characterization of events by their attorneys in the Response itself. The defendants state that Doe "has been removed from the sex offender registry, and the TDOC Sex Offender Standards of Supervision are not being applied to him." (Doc. No. 49 at 1.) The defendants argue, however, that "all parolees—not just sex offenders—are subject to periodic residence searches" and that TDOC therefore "did not violate the terms of the injunction when it initiated a search of Plaintiff's residence." (Doc. No. 49 at 1.) Regarding the reason that the search was actually performed, however, the defendants state the following:

> On January 21, 2022, TDOC officers visited Plaintiff's home as part of a list of homes to visit that day. Both management-level TDOC employees who know of Plaintiff's identity in connection to the preliminary injunction were out of the office that day due to military leave and illness. When Plaintiff protested to the TDOC officers, the officers called one of the supervisors, who advised the TDOC officers to leave.

(Doc. No. 49 at 2–3 (citations omitted).) As Doe points out, TDOC's policies further confirm that the January 21, 2022 search was performed in the manner associated with a sexual offender home search, which requires a team of at least four officers, as opposed to an ordinary parolee home visit, which does not. (*See* Doc. No. 47-6 at 7; Doc. No. 47-7 at 01509–10; Doc. No. 47-9 at 3.)

Before the court fully addresses Doe's request, it is important to note what is and what is not under consideration here. There may be difficult questions regarding whether and to what degree Tennessee could, in theory, constitutionally use its parole system to recreate registry-like conditions for people whose crimes pre-dated the registry but who remain on parole. This case, however, is not about that general question, nor is that question presented by the motion currently pending. Rather, the basis for Doe's motion is the Commissioner's obligation to make

5

"a good faith effort to comply with" this court's Order of May 12, 2021. *United States v. Hendrickson*, 822 F.3d 812, 821 (6th Cir. 2016) (emphasis omitted) (quoting *United States v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000)). That Order was not simply a general admonition to obey the law.[4] Rather, the preliminary injunction arose out of the court's power "to mould each decree to the necessities of the particular case," *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62 (1975) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)), and included an affirmative obligation for each defendant to "take such necessary steps to ensure that Doe is removed from Tennessee's sexual offender registry." (Doc. No. 30 at 1.) The court therefore must evaluate the Commissioner's actions, not based solely on his general legal obligations under the Constitution and relevant statutes, but against the backdrop of the preliminary injunction itself, its purposes in regard to this particular litigation, and its affirmative commands to ensure that Doe's removal from the registry was total and effective.

It is therefore somewhat beside the point whether, in a vacuum, TDOC *could* have searched Doe's home based on his status as an ordinary parolee, because that is not what the evidence in the record suggests actually happened. Rather, Doe's unrefuted account plainly establishes that his home was searched pursuant to a "sex offender check" that TDOC performed because it simply failed to make sure all of its relevant personnel knew that Doe had been removed from the registry. That failure violated the court's order—or at least the obligation to take good faith steps to effect the order—regardless of whether there might have been some constitutionally permissible manner for performing the search itself.

The defendants nevertheless argue that the court has no power to grant Doe the relief he seeks because that would amount to a collateral attack on his parole conditions, which would be

---

[4] In fact, such "obey the law" injunctions are strongly disfavored. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2955 & n.25 (3d ed.).

properly raised pursuant to a petition for habeas corpus, not a § 1983 claim. *See Holson v. Good*, 579 F. App'x 363, 365 (6th Cir. 2014) (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). The defendants' position, however, misapprehends the nature of Doe's request. Doe has not pursued any § 1983 claim based on the conditions of his probation, nor has he sought any declaration that those conditions, in and of themselves, violate the Constitution. Rather, Doe argues that TDOC has abused its power as the agency overseeing his probation to violate the preliminary injunction, which is addressed only to his registry status. It was the State of Tennessee, not Doe, that made the choice to mix its registry functions with its parole supervision functions. The defendants cannot rely on the confusion and overlap that they created to evade their obligations pursuant to the court's preliminary injunction.

"[I]t is well established that a federal court ordinarily has the power to enforce its own orders and judgments." *Shultz v. Wells*, 73 F. App'x 794, 796 (6th Cir. 2003) (citing *Peacock v. Thomas*, 516 U.S. 349, 356–57 (1996); *Shillitani v. United States*, 384 U.S. 364, 370, (1966)). In addition to that specific authority, "[t]he federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses." *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The court finds, pursuant to those powers, that the Commissioner has failed to take necessary and reasonable steps to comply with the court's preliminary injunction and that additional terms are necessary to prevent future violations. The defendants have not meaningfully refuted Doe's evidence that TDOC personnel have, on more than one occasion, demonstrated ignorance and confusion regarding whether Doe is still a registered sexual offender. The defendants, moreover, have not provided any declarations or other evidence setting forth how they intend to avoid such misunderstandings in the future without removing Doe from

7

the supervision of the PSU. While the court makes no findings regarding the general lawfulness of applying PSU supervision or any specific policy to an individual omitted from the sexual offender registry due to the Ex Post Facto Clause, the court finds that Doe has demonstrated the necessity of imposing additional guardrails in this case to prevent continued violations of the Commissioner's duties under the preliminary injunction.

Doe's Motion to Clarify (Doc. No. 46) is therefore **GRANTED**. It is hereby **ORDERED** that the Commissioner shall:

1. Immediately take all steps necessary to ensure that no TDOC employee, representative, or agent who participates in Doe's supervision incorrectly believes him to be on the sexual offender registry;

2. Remove Doe's supervision from the administration of the PSU, which has demonstrated an inability to distinguish between Doe and its registered sexual offender population; and

3. Refrain from applying any policies to Doe that, on their face, are applicable only to registered sexual offenders.

Any additional failure by any defendant to adequately convey Doe's removal from the registry to its personnel may give rise to sanctions.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge